NEIGHBORHOOD BUILDERS, INC., ET AL.
*v.* TOWN OF MADISON
(SC 18083)

Rogers, C. J., and Norcott, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued October 23, 2009—officially released February 2, 2010

*Thomas R. Gerarde,* with whom, on the brief, were *Kevin M. Tighe, William H. Clendenen, Jr.,* and *Kevin C. Shea,* for the appellant (defendant).

*William Andrew Lichtenfels,* with whom were *Matthew Hausman* and, on the brief, *Ann Grunbeck Monaghan,* for the appellee (named plaintiff et al.).

*Opinion*

ZARELLA, J. The defendant, the town of Madison (town), appeals[1] from the order of the trial court granting the plaintiffs'[2] motion for class certification in this action alleging violations of General Statutes §§ 7-130i[3] and 7-148,[4] article tenth of the Connecticut constitu-

---

[1] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The plaintiffs are (1) Neighborhood Builders, Inc., (2) Peter Smith Building Company, LLC, (3) The Dowler Group, LLC, (4) MJM Builders, Inc., and (5) Richard Gentile Building Company, LLC, all of which applied to the town for building permits after the town amended its ordinances on April 1, 2003, to increase the permit cost. We refer to these five plaintiffs collectively as the plaintiffs throughout this opinion. Paul Coady Construction, LLC, which also was a plaintiff, withdrew from the action on October 19, 2006.

[3] General Statutes § 7-130i grants municipalities the power to charge or levy fees for the cost of services provided.

[4] General Statutes § 7-148 (c) (2) (B) grants municipalities the power to "[a]ssess, levy and collect taxes . . . ."

tion,[5] 42 U.S.C. § 1983,[6] and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.,[7] arising from the town's "unlawful practices related to the collection, use, and allocation of [money] collected from the [p]laintiffs and others similarly situated, under the mechanism of building permit fees."[8] On appeal, the town initially claimed in its preliminary statement of the issues that the trial court improperly had granted the motion because the plaintiffs had failed to satisfy the applicable requirements for class certification in Practice Book § 9-7[9] and Practice Book (2007) § 9-8.[10] Thereafter, the trial court granted in part the

[5] Article tenth of the constitution of Connecticut provides that the General Assembly may delegate to municipalities such authority as it deems appropriate and may prescribe the methods by which municipalities may establish regional governments and enter into compacts.

[6] Title 42 of the United States Code, § 1983, provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[7] General Statutes § 42-110b provides in relevant part: "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ."

[8] The plaintiffs, all of which are small businesses established as either a limited liability company or a Connecticut corporation with its principal place of business in Connecticut, specifically alleged that revenues derived by the town from the payment of building permit fees are significantly in excess of the cost to the town of regulating building activity, and that the town unlawfully uses the fees to fund social programs and other initiatives that bear no relationship to the regulation of building activity.

[9] Practice Book § 9-7 provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

[10] Practice Book (2007) § 9-8 provides: "An action may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members

town's motion to dismiss the complaint for lack of subject matter jurisdiction, leaving only the CUTPA claim intact.[11] Following that decision, the town amended its preliminary statement of the issues and now claims that, because CUTPA does not apply to municipalities, it is entitled to judgment as a matter of law. The town also claims that, even if CUTPA applies to municipalities, the case should be remanded to the trial court for reconsideration of the class certification order in light of its dismissal of the non-CUTPA counts. The town finally claims that the trial court improperly applied the relevant standing and class action criteria when it granted class action status with respect to the CUTPA claim. The plaintiffs respond that the issue of whether a CUTPA claim may be alleged against a municipality is not before this court and thus cannot be reviewed. They also maintain that the trial court properly considered the CUTPA claim when it certified the class and that the court correctly applied the relevant standing and class action criteria. We affirm the trial court's order granting class certification.

The following facts and procedural history are relevant to our resolution of this appeal. The named plaintiff, Neighborhood Builders, Inc., and four additional plaintiffs[12] filed a five count complaint on January 18, 2004. On January 21, 2005, they filed an amended com-

of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Hereinafter, all references to Practice Book § 9-8 are to the 2007 version.

[11] Specifically, the court dismissed the first four counts, namely, those alleging violations of §§ 7-130i and 7-148 (counts one and two), article tenth of the Connecticut constitution (count three), and 42 U.S.C. § 1983 (count four). We hereinafter refer to these counts collectively as the first four counts or the non-CUTPA counts. We hereinafter refer to the count alleging a violation of CUTPA as the fifth count, the CUTPA count or the CUTPA claim.

[12] Paul Coady Construction, LLC, also was a plaintiff when the original complaint was filed. It later withdrew from the action. See footnote 2 of this opinion.

plaint to include an additional plaintiff. On March 19, 2007, the plaintiffs filed a motion for class certification on behalf of all persons who are building permit holders, permit applicants, real property owners of record and permit payees. On May 16, 2007, the town filed a motion for summary judgment, arguing, with respect to the CUTPA count, that CUTPA does not apply to municipalities and that, even if it does, the imposition of increased building permit fees is not a violation of CUTPA. The trial court heard arguments on the motion for class certification on June 5, 2007. On October 12, 2007, the court granted the motion as to "the entire complaint" and certified a class consisting of "entities that directly paid to the [town] the allegedly excessive building permit fees during the period of April 1, 2003, to the present."

On October 25, 2007, the town appealed from the order granting class certification. On December 27, 2007, the town filed a motion to dismiss all counts of the plaintiffs' amended complaint. The town argued, with respect to the CUTPA count, that the plaintiffs did not have standing because CUTPA does not provide for a private cause of action against a municipality. On May 14, 2008, the trial court granted the town's motion to dismiss as to the first four counts but denied the motion as to the CUTPA count, explaining that, "[o]n the face of the statute, the plaintiffs have no issue with subject matter jurisdiction or standing." The court did not hear arguments on, or decide, the town's summary judgment motion. Thereafter, the town amended its statement of the issues on appeal to focus exclusively on the CUTPA count.

The standard for reviewing a class certification order is well established. "A trial court must undertake a rigorous analysis to determine whether the plaintiffs have borne the burden of demonstrating that the class certification requirements of Practice Book §§ 9-7 and

9-8 have been met. . . . A trial court nonetheless has broad discretion in determining whether a suit should proceed as a class action. . . . As long as the trial court has applied the proper legal standards in deciding whether to certify a class, its decision may . . . be overturned [only] if it constitutes an abuse of discretion." (Internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 287 Conn. 208, 212–13, 947 A.2d 320 (2008). "[D]oubts regarding the propriety of class certification should be resolved in favor of certification." (Internal quotation marks omitted.) Id., 213.

With respect to the governing legal principles, we have explained that, "[t]o prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce; General Statutes § 42-110b (a);[13] and (2) each class member claiming entitlement to relief under CUTPA has suffered an ascertainable loss of money or property as a result of the defendant's acts or practices. General Statutes § 42-110g (a).[14] The ascertainable loss requirement is a threshold barrier [that] limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation." (Internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, supra, 287 Conn. 217–18.

---

[13] See footnote 7 of this opinion.

[14] General Statutes § 42-110g (a) provides: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

Upon satisfaction of this threshold test, "[t]he rules of practice set forth a two step process for trial courts to follow in determining whether an action or claim qualifies for class action status. First, a court must ascertain whether the four prerequisites to a class action, as specified in Practice Book § 9-7, are satisfied. These prerequisites are: (1) numerosity—that the class is too numerous to make joinder of all members feasible; (2) commonality—that the members have similar claims of law and fact; (3) typicality—that the [representative] plaintiffs' claims are typical of the claims of the class; and (4) adequacy of representation—that the interests of the class are protected adequately. . . .

"Second, if the foregoing criteria are satisfied, the court then must evaluate whether the certification requirements of Practice Book § 9-8 are satisfied. These requirements are: (1) predominance—that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) superiority—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . . Because our class certification requirements are similar to those embodied in rule 23 of the Federal Rules of Civil Procedure, and our jurisprudence governing class actions is relatively undeveloped, we look to federal case law for guidance in construing the provisions of Practice Book §§ 9-7 and 9-8." (Internal quotation marks omitted.) Id., 213–15.

I

The town first contends that a CUTPA claim cannot be brought against a municipality, especially for the performance of a regulated government function such as issuing building permits. The town thus argues that the plaintiffs cannot prevail on their CUTPA claim and that it is entitled to judgment as a matter of law. The

town also argues that the trial court's dismissal of the first four counts of the amended complaint has rendered the class certification order, which the court applied to "the entire complaint," fundamentally flawed, thus necessitating a remand for reconsideration of whether the CUTPA claim, standing alone, qualifies for class certification. The plaintiffs respond that the issue of whether a CUTPA claim can be brought against a municipality is not properly before this court. They also argue that there is no need to remand the case for reconsideration of the class certification order insofar as it pertains to the CUTPA claim because the trial court specifically considered the factors that distinguish class actions involving CUTPA claims in its certification decision. We agree with the plaintiffs that the issue of whether a CUTPA claim can be brought against the town is not before this court and that the trial court properly considered the special factors that apply to CUTPA claims in granting the motion for class certification.

A

"Our law surrounding interlocutory appeals and final judgments is well settled. The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . The statutory right to appeal is limited to appeals by aggrieved parties from final judgments. . . . Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . .

"Adherence to the final judgment rule is not dictated by legislative fiat alone. . . . In both criminal and civil cases . . . we have determined [that] certain interlocutory orders and rulings of the Superior Court [are] final judgments for purposes of appeal. An otherwise inter-

locutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them. . . . Unless the appeal is authorized under [these] criteria, absence of a final judgment is a jurisdictional defect that [necessarily] results in a dismissal of the appeal." (Citations omitted; internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 733–34, 818 A.2d 731 (2003).

In the present case, the town appeals from the trial court's order granting the plaintiffs' motion for class certification pursuant to General Statutes § 42-110h.[15] In their memorandum of law in support of that motion, the plaintiffs argued that their claims satisfied the requirements for class certification set forth in Practice Book §§ 9-7 and 9-8, namely, numerosity, commonality, typicality, adequacy of representation, predominance and superiority. The town argued in opposition that the plaintiffs' claims did not satisfy those requirements. Neither party addressed whether a CUTPA claim may be brought against a municipality,[16] and, as a result, the

[15] General Statutes § 42-110h provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this section may be conditional, and it may be amended before decision on the merits. An order issued under this section shall be immediately appealable by either party."

[16] In contrast, the town had argued in its summary judgment motion that it was entitled to judgment as a matter of law on count five because CUTPA does not apply to municipalities or to claims of enforcement of municipal ordinances generally, and the building code in particular, because the municipal regulation of building construction within municipal boundaries, including the charging of permit fees, is an integral part of a town's municipal powers under § 7-148. The town made a similar argument in its motion to dismiss. The trial court, however, took no action on the summary judgment motion and denied the motion to dismiss with respect to the plaintiffs' CUTPA claim.

trial court did not rule on that issue when it certified the class. Accordingly, in the absence of any statutory or other authority to the contrary, this court lacks jurisdiction to consider the claim in the context of the town's interlocutory appeal.[17] See *State* v. *Alvarez*, 257 Conn. 782, 796–97, 778 A.2d 938 (2001) (declining to review due process claim in interlocutory appeal from ruling denying motion to dismiss premised on double jeopardy claim).

The town, citing *Montoya* v. *Montoya*, 280 Conn. 605, 617 n.11, 909 A.2d 947 (2006), *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 106–107, 890 A.2d 104 (2006), *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 332, 880 A.2d 106 (2005), *State* v. *Padua*, 273 Conn. 138, 171 n.37, 869 A.2d 192 (2005), and *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 201 n.5, 719 A.2d 465 (1998), argues that this court, on several occasions, has resolved issues presented on appeal for reasons of judicial economy, even though it could have chosen to remand the issues to the lower court for determination. In each of the cited cases, however, we addressed an issue that had been raised in the lower court proceeding and had resulted in the ruling that ultimately was appealed. See *Montoya* v. *Montoya*, supra, 617–19; *Shelton* v. *Statewide Grievance Committee*, supra, 106–108; *Collins* v. *Anthem Health Plans, Inc.*, supra, 332; *State* v. *Padua*, supra, 171–74; *Cumberland Farms, Inc.* v. *Groton*, supra, 201 n.5. In contrast, the issue of the town's liability under CUTPA was not raised by either party in the class certification motion or in their respective memoranda to the trial court, and, significantly, the court has not yet rendered a final judgment in the proceeding. Accordingly, this court has no jurisdiction to decide the claim.

[17] The town can pursue this issue in connection with its summary judgment motion, and any decision thereon could be reviewed on appeal.

## B

The town further claims that the trial court's dismissal of the four non-CUTPA counts of the amended complaint rendered the class certification order with respect to the CUTPA count fundamentally flawed, thus necessitating reconsideration of the order with respect to that count. The town also argues that the court improperly failed to conduct the CUTPA specific predominance analysis set forth in *Collins* and *Artie's Auto Body, Inc.* We disagree.

We previously have noted that, "in the event that circumstances change as discovery proceeds and the trial court determines that class certification is improper, it may issue an order modifying its prior certification order or decertifying the class altogether. Our courts . . . have stated that [a trial court] has broad discretion in determining whether a suit should proceed as a class action. . . . Nonetheless, despite the absence of a requirement under our class action rules that trial courts monitor developments that may bear [on] certification . . . such a procedure is prudent and sensible when a trial court considers it warranted under the circumstances of the particular case. Such an approach not only protects the resources of the courts . . . but also may protect the parties' interests—defendants may be protected from frivolous class action lawsuits and plaintiffs may be permitted to adjust the class definition when necessary to conform to the changing circumstances." (Internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, supra, 287 Conn. 235–36.

In the present case, the trial court granted the town's motion to dismiss as to the first four counts of the complaint more than six months after the town had appealed from the class certification order. It is well established that the decision to certify a class in the

first instance lies with the trial court. See id., 236. To the extent that the town claims that the trial court's certification of the class with regard to the CUTPA claim must be reconsidered in light of changed circumstances, we conclude that the more appropriate procedure is for the town to file a motion with the trial court to decertify the class because of changed circumstances. Accordingly, we decline the town's invitation to remand the case to the trial court for reconsideration of the class certification order.

Insofar as the town also claims that the trial court improperly failed to consider the special criteria necessary to certify a CUTPA claim for class action status, we disagree. As we previously stated, in order to certify a CUTPA claim for class action status, the representative plaintiffs must prove, in addition to the fact that the defendant engaged in unfair or deceptive acts or practices, that each putative class member has suffered an ascertainable loss as a result of the defendant's acts or practices. See id., 217–19. The issue of ascertainable loss, or standing, must be addressed *before* a court may consider the other criteria for class certification. See id., 217–18. In the present case, the court did exactly as required. The court first examined federal and state antitrust and CUTPA law in determining that the plaintiffs had suffered an ascertainable loss. See, e.g., *Hanover Shoe, Inc.* v. *United Shoe Machinery Corp.*, 392 U.S. 481, 489, 88 S. Ct. 2224, 20 L. Ed. 2d 1231 (1968); *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 65–77, 793 A.2d 1048 (2002). The court then considered the requirements of numerosity, commonality, typicality, adequacy of representation, predominance and superiority in limiting the putative class to those entities that had paid the permit fees directly to the town. In its discussion of predominance, the trial court set forth the legal principles discussed and used by this court in *Collins* v. *Anthem Health Plans, Inc.*, supra, 275 Conn. 329–32,

in which we determined whether the CUTPA claim in that case merited class action status. The trial court then concluded that generalized, rather than individualized, evidence would be sufficient to prove that the permit fees were excessive and that the class members had suffered an ascertainable loss. Accordingly, we conclude that the trial court properly considered the unique issues that distinguished the CUTPA claim from the plaintiffs' other claims and that it did not abuse its discretion by failing to consider any CUTPA specific factors in ruling on the plaintiffs' motion for class certification.

## II

The town next claims that, to the extent that the trial court considered the plaintiffs' CUTPA claim, it abused its discretion because it conflated the analysis of remoteness and ascertainable loss, and improperly determined that the plaintiffs had met their burden of proving predominance and superiority. The plaintiffs respond that the trial court properly applied the relevant standing and class certification criteria. We agree with the plaintiffs.

## A

The town first claims that the trial court improperly combined the remoteness and ascertainable loss doctrines and incorrectly determined that, once the remoteness doctrine had been satisfied, ascertainable loss also had been proven. The town relies on *Vacco* v. *Microsoft Corp.*, supra, 260 Conn. 59, and *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 780 A.2d 98 (2001),[18] in

_____

[18] In *Ganim*, we described the remoteness/standing test as follows: "[T]hree policy factors . . . guide courts in their application of the general principle that plaintiffs with indirect injuries lack standing to sue . . . . First, the more indirect an injury is, the more difficult it becomes to determine the amount of . . . damages attributable to the wrongdoing as opposed to other, independent factors. Second, recognizing claims by the indirectly injured would require courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from

which we applied the three part remoteness test in determining that parties who are not direct purchasers of a product do not have the requisite standing to pursue CUTPA claims. See *Vacco* v. *Microsoft Corp.*, supra, 89–92; *Ganim* v. *Smith & Wesson Corp.*, supra, 353–62. The town asserts that the two doctrines are separate and that both must be satisfied independently to satisfy the requisite standing requirements under CUTPA.

In *Ganim*, the defendants, certain firearms manufacturers, argued that the plaintiffs, the city of Bridgeport and its mayor, did not have standing to assert a CUTPA claim, the alleged harm having been "too indirect and remote from the defendants' conduct . . . ." *Ganim* v. *Smith & Wesson Corp.*, supra, 258 Conn. 325. In agreeing with the defendants, this court reasoned that "the ascertainable loss requirement of CUTPA does not displace the remoteness doctrine as a standing limitation"; id., 372; because applying the principle of ascertainable loss to confer standing on the plaintiffs in that case, "irrespective of the remoteness doctrine, would render CUTPA virtually limitless. We do not think that the legislature intended such a result." Id., 373. The court further reasoned that, "[i]f the only standing requirement under CUTPA were that, as a result of [a] defendant's prohibited conduct, the plaintiff suffered an 'ascertainable loss of money or property'; General Statutes § 42-110g (a); then any plaintiff who could, in a 'but for' cause sense, trace his or her loss to the defendant's wrongful conduct, would have standing to assert a CUTPA claim against the defendant, irrespective of how

_____

the violative acts, in order to avoid the risk of multiple recoveries. Third, struggling with the first two problems is unnecessary [when] there are directly injured parties who can remedy the harm without these attendant problems." (Citation omitted; internal quotation marks omitted.) *Ganim* v. *Smith & Wesson Corp.*, supra, 258 Conn. 353. The purpose of the test is to determine whether the harm allegedly suffered is indirect, remote and derivative with respect to the defendant's conduct, and, therefore, whether the plaintiff can allege an ascertainable loss and thus have standing. See id.

remote or derivative that loss was. That would render CUTPA subject to yielding bizarre results. We do not read statutes to yield such results . . . and CUTPA is no exception." (Citation omitted.) *Ganim* v. *Smith & Wesson Corp.*, supra, 373. The court thus concluded that the plaintiffs in *Ganim* lacked standing under the remoteness doctrine; id.; and that their CUTPA claim must fail. See id.; see also *Vacco* v. *Microsoft Corp.*, supra, 260 Conn. 90–92.

In *Ganim* and *Vacco*, we did not address ascertainable loss directly because the parties' arguments focused on the remoteness doctrine as a limitation on standing. In other words, because we determined that the injuries that the plaintiffs suffered in those cases were too remote from the defendants' conduct, it was not necessary to continue the analysis with a closer examination of ascertainable loss.

In contrast, the question before the trial court in the present case was more complex because the plaintiffs sought certification of a diverse class consisting of building permit holders, permit applicants, real property owners of record and permit payees. Proposed class members thus fell into three groups consisting of those who had paid the permit fees and were not reimbursed by others, those who had paid the permit fees but were reimbursed by others, and those who had borne the cost of the permit fees because it was passed on to them by others. Accordingly, the trial court's decision must be read in this context.

In its memorandum of decision, the trial court first considered whether those who received reimbursement for the building permit fees had suffered an ascertainable loss. Although it did not use the term "ascertainable loss," no other conclusion can be drawn from its analysis of *Hanover Shoe, Inc.* v. *United Shoe Machinery Corp.*, supra, 392 U.S. 481, but that it was relying on

that case for guidance in determining whether those who had paid the permit fees but were later reimbursed had suffered a compensable loss. The trial court noted the conclusion in *Hanover Shoe, Inc.*, that direct purchasers in antitrust actions were proper plaintiffs when costs were illegally high *regardless of whether they had recouped the loss* by making their business operations more efficient or by passing on the illegal costs to others. The trial court specifically relied on the high court's observation that, "when a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage . . . .

"The reason is that he has paid more than he should and his property has been illegally diminished, for had the price paid been lower his profits would have been higher. . . . [*T*]*he buyer is equally entitled to damages if he raises the price of his own product*. As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows." (Emphasis added.) Id., 489.

The trial court then turned to *Illinois Brick Co.* v. *Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), and *Vacco* to address the status of those who had borne the cost of the fees indirectly. The court observed that, in *Illinois Brick Co.* and *Vacco*, indirect purchasers had not been permitted to bring claims based on "pass-on" theories of liability. Id., 735; see *Vacco* v. *Microsoft Corp.*, supra, 260 Conn. 90–91. The court thus concluded that, because the court in *Vacco* relied on *Hanover Shoe, Inc.*, and *Illinois Brick Co.* in interpreting antitrust law and CUTPA, "it appears that, for certain causes of action, Connecticut is reluctant to even allow indirect purchasers to bring causes of action and *favors* direct purchasers bringing these actions as the United States Supreme Court in *Hanover*

*Shoe, Inc.*, did. If direct purchasers are favored to bring actions alleging CUTPA and state antitrust violations, it appears to this court that the putative class members in the present case, as entities who directly paid the allegedly excessive building permit fees, would be the parties favored to bring this cause of action against the defendant. Entities who may have ultimately [borne] the cost of the excessive building permit fees but did not directly pay the [town] the fees, would, it seems, at a minimum, encounter difficulties establishing standing with regard to a CUTPA claim. Therefore, this court concludes that, in the present case, any liability of the [town] would attach the moment the putative class members paid the allegedly excessive building permit fees to it, notwithstanding the fact that some putative class members may have passed on these allegedly excessive fees to other entities such as homeowners." (Emphasis in original.) The court thus resolved the issue of standing as to all three groups for which the plaintiffs had sought class certification by determining that those who had paid the building permit fee directly to the town, regardless of reimbursement, had suffered an ascertainable loss and thus had standing to assert a CUTPA claim, and that those to whom the cost of the fee had been passed on had suffered too remote an injury to assert such a claim.

The town misunderstands the trial court's analysis. Although the cases on which the trial court relied in discussing the remoteness test, including *Illinois Brick Co.*, *Ganim* and *Vacco*, supported its conclusion that certification should be limited to those who had paid the permit fee directly to the town, the same cases were relevant in denying certification of proposed class members who had indirectly borne the cost of the fees under the pass-on theory of liability. Moreover, the town completely overlooks the trial court's discussion of *Hanover Shoe, Inc.*, which expressly considered and

decided whether those who had been reimbursed for the payment of illegal costs had suffered a compensable loss; see *Hanover Shoe, Inc.* v. *United Shoe Machinery Corp.*, supra, 392 U.S. 489; the same question presented to the trial court with respect to proposed class members who had paid the building permit fee to the town but who subsequently were reimbursed. Accordingly, we conclude that the trial court did not abuse its discretion in applying the remoteness and ascertainable loss tests but, rather, properly applied both tests in resolving whether all of the diverse members of the proposed class had standing.

B

The town also claims that the trial court abused its discretion in concluding that the plaintiffs had satisfied their burden of proving under the tests set forth in *Collins* and *Artie's Auto Body, Inc.*, that common issues of law and fact predominated and that a class action was superior to other methods of adjudication. The town's claims are premised on the theory that the class should be limited to those who have paid the permit fees and were not reimbursed, a significant departure from the class certified by the court, which consisted of those who have paid the fees *regardless* of reimbursement. Under its definition of the class, the town posits that individualized inquiries will be necessary to determine whether each class member has suffered an ascertainable loss because it will not be readily apparent from the public record whether the entity that paid the permit fee ultimately was reimbursed.

In its memorandum of decision, the trial court first set forth the predominance test as described in *Collins* v. *Anthem Health Plans, Inc.*, supra, 275 Conn. 329–32, and observed that "the plaintiffs allege in support of each count in the amended complaint that the [town] charged building permit fees that were in excess of

what the [town] needed to offer and regulate its building activity. The question of whether the [town] charged excessive building permit fees is one that is common to the plaintiffs and the putative class members *as defined by this court* with regard to numerosity. In the [present] case, the plaintiffs and putative class members will need to proffer generalized evidence, as opposed to individualized evidence, to the court to prove that the building permit fees that the [town] charged them were excessive. If it is determined that building permit fees that the [town] assessed during a defined time period were excessive, then the [town's] records can establish the amount of excessive fees that the plaintiffs and putative class members were charged. This court finds that the common issues subject to generalized proof *predominate over the issues requiring individual-ized proof,* as the main issue in this case is whether the [town] assessed excessive building permit fees over a defined time period, and if it is determined that the [town] did indeed assess excessive building permit fees during that time period, then the [town] will be liable to [whomever] was assessed building permit fees during that time period. Again, if it is found that the [town's] building permit fees were excessive, the [town's] records can establish the amount that the putative class members were overcharged." (Emphasis added.)

On the issue of superiority, the trial court stated that "[n]o party has asserted, and the court is unaware of, any expressed interest by any individual entity that directly paid the allegedly excessive permit fees to the [town] in controlling the prosecution of a separate action involving the subject matter of this case. The plaintiffs assert that the amount of permit fees paid by each individual putative class member would appear to militate against an individual putative class member's interest in pursuing a separate claim. This court is

unaware of any existing cases raising similar issues by members of the putative class.

"The support of the New Haven chapter of the Connecticut Home Builders Association and the National Home Builders Association help[s] to [e]nsure that the interests of the putative class members are considered during the cause of the litigation. In the present case, the allegedly excessive building permit fees were assessed in Connecticut, and Connecticut statutes and the Connecticut constitution are implicated. Also, when this case was transferred to the Complex Litigation Docket in [the judicial district of] Waterbury after having been brought in the judicial district of New Haven, no objections were made to the transfer.

"This court is unaware of any special difficulties [that] it would encounter in managing this litigation as a class action. In fact, there are several advantages to adjudicating this action as a class action, including the elimination of the possibility of several lawsuits raising the same legal and factual issues, and the attendant duplication of litigation expenses, [attorney's] fees and [the] parties' time. A class action would also decrease the likelihood of inconsistent judicial decisions. For all of [the] aforementioned reasons, [the] court finds a class action superior to other causes of action."

In *Collins*, we stated that the predominance and superiority requirements are "intertwined" and that the "manageability issue is relevant to both. Once predominance is determined, considerations of superiority and manageability should fall into their logical place. . . . If the predominance criterion is satisfied, courts generally will find that the class action is a superior mechanism even if it presents management difficulties." (Citation omitted; internal quotation marks omitted.) *Collins* v. *Anthem Health Plans, Inc.*, supra, 275 Conn. 347.

In the present case, the trial court described the certified class as consisting of "entities that directly paid to the [town] the allegedly excessive building permit fees during the period of April 1, 2003, to the present." Consequently, individualized proof will not be necessary to identify class members and the fees they paid because the relevant information may be discovered by examining the public records. Whether the building fees are excessive also may be demonstrated by generalized rather than individualized evidence. As we previously explained, the town's argument that the requirements of predominance and superiority cannot be satisfied rests on the theory, rejected by the court, that the certified class should be limited to those who paid the permit fees but were not reimbursed. If the court had defined the class in that manner, we would agree with the town that it would not be apparent from the public records which entities had not been reimbursed, thus necessitating individualized inquiries to determine ascertainable loss. The court, however, chose to follow the reasoning in *Hanover Shoe, Inc.*, and *Vacco* and to define the class as including all those who have paid the building permit fee regardless of reimbursement. Moreover, the town itself concedes that the court's definition of the class, which it considers flawed, "is outcome determinative for both the predominance and superiority analyses." Consequently, because the issue of reimbursement was eliminated by the court's definition of the class, and in view of the court's otherwise thorough and appropriate discussion of predominance and superiority, we conclude that the court did not abuse its discretion in granting the motion for class certification of the plaintiffs' CUTPA claim.

The order granting class certification is affirmed.

In this opinion the other justices concurred.