McDONALD, J.
**43 *154 Standard Petroleum Company, the counterclaim defendant and the defendant, respectively, in the two cases that comprise this consolidated action (defendant), appeals from the trial court's orders certifying class actions against it. The class actions are premised on allegations that the defendant overcharged service station operators and franchisees for gasoline products.[1] Generally, the defendant claims that the trial court abused its discretion in certifying the class[2] because it failed to apply the "rigorous analysis" that is required before such a certification may be granted. In particular, the defendant claims that the trial court's error is most clearly evidenced by its failure to address various elements of the causes of action and the special defenses when it determined that common issues predominated. We conclude that the defendant has failed to establish that the trial court abused its discretion in ordering class certification.
The record reveals the following facts, assumed to be true by the trial court for purposes of the certification issues or otherwise undisputed, and procedural history. Kennynick, LLC, and Faugno Acquisition, LLC
**44 (Faugno)[3] (collectively, plaintiffs),[4] are service station operators and were franchised dealers for gasoline products supplied by the defendant, which is a wholesale supplier. In 2009, the plaintiffs commenced an action against the defendant, purportedly on behalf of themselves and other persons who had been supplied with gasoline products by the defendant. The complaint alleged that the proposed class members had been overcharged in two respects. First, it alleged that the defendant had charged class members the federal gasoline tax at a rate of 18.4 cents per gallon without applying a federal tax credit that would have had the effect of reducing that rate and that had been effective between January 1, 2005 and December 31, 2011.[5] Second, it alleged that, at all *155 relevant times since September 27, 2004, the defendant had charged class members the Connecticut gross receipts tax on the basis of the price of gasoline as delivered, and thus had improperly charged for state tax on the defendant's profit (including the federal tax overcharge) and delivery. In reliance on these allegations, the six count complaint set forth claims of (1) breach of contract, (2) unjust enrichment, **45 (3) violation of the Connecticut Petroleum Franchise Act, General Statutes § 42-133j et seq., (4) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., (5) violation of the good faith requirement under the Uniform Commercial Code, General Statutes § 42a-2-305 (2), and (6) misrepresentation.[6] The plaintiffs sought relief including money damages for past losses, injunctive relief prohibiting the defendant from conduct that would cause future losses, and punitive damages.
Shortly thereafter, the defendant commenced a separate action against one of the plaintiffs, Faugno, alleging breach of contract.[7] In response, Faugno filed a counterclaim, also styled as a proposed class action, which in all material respects mirrored the plaintiffs' complaint in the earlier action. Pursuant to the plaintiffs' motions, and in the absence of objection from the defendant, the trial court consolidated the two actions.[8]
In 2015, after the plaintiffs had obtained compliance with discovery requests, they moved for orders certifying the action as a class action pursuant to Practice Book § 9-9.[9] The defendant filed an opposition, which **46 included a supporting affidavit by its vice president. The trial court held a hearing on the motion and reserved decision. Thereafter, the trial court issued orders certifying a class action on all counts. The orders defined the class as "all entities or persons who: (i) purchased gasoline from [the defendant] during the period September 27, 2004 to date; (ii) were charged federal gasoline tax at a rate of 18.4 cents per gallon on such gasoline purchases; (iii) did not receive the federal ... tax credit, while it was in effect, on such gasoline purchases; and (iv) were charged state gross receipts tax on such gasoline *156 purchases based on the price of gasoline, as delivered." The orders also approved the plaintiffs as class representatives and their counsel as class counsel. The orders indicated that further articulation would follow.
The trial court thereafter issued a memorandum of decision setting forth that articulation, which we explore in fuller detail later in this opinion. In that decision, the trial court noted that the plaintiffs had identified at least eighty-one of the defendant's gasoline customers during the relevant time period as potential members of the proposed class: forty-four had supply contracts with the defendant and thirty-seven had purchased gasoline on an as invoiced basis. With regard to those with written contracts, there were four subclasses with varied arrangements, but all contracts contained an identical provision stating that the "prices include taxes ... which [the defendant] may be required to collect or pay pursuant to any present or future laws ...." The court pointed to the fact that all of the potential class members had received invoices from the defendant. The court noted that the plaintiffs had reviewed "a 'substantial sampling' of the more than **47 14,000 invoices produced by [the defendant] in discovery" and had represented that "the invoices appear to be almost identical to the invoices that the [plaintiffs] received for payment." The court addressed separately each requirement for class certification under Practice Book § 9-7, concluding that each had been satisfied. Largely in reliance on the facts and legal issues cited in that analysis, the court also concluded that each of the policy considerations under Practice Book § 9-8 weighed in favor of allowing the action to proceed as a class action.
The defendant appealed from the orders certifying the class. See footnote 1 of this opinion. After the court issued its memorandum of decision, the defendant did not seek any further articulation.
On appeal, the defendant contends that the trial court abused its discretion in granting class certification because it failed to apply the requisite "rigorous analysis" to each class certification requirement. Instead, the defendant contends, the trial court merely required " 'some showing' " to support each requirement, engaged in a "cursory review of the claims and evidence," and disregarded certain evidence, elements, and defenses. We conclude that, in light of the claims and arguments advanced to the trial court, its grant of class certification was not an abuse of discretion.
I
Given the nature of the defendant's claims, a discussion of the applicable standards that guide our review takes on heightened significance. Therefore, clarifying certain aspects of these standards must be our starting point.
"[T]he rules of practice set forth a two step process for trial courts to follow in determining whether an action or claim qualifies for class action status. First, **48 a court must ascertain whether the four prerequisites to a class action, as specified in Practice Book § 9-7, are satisfied. These prerequisites are: (1) numerosity-that the class is too numerous to make joinder of all members feasible; (2) commonality-that the members have similar claims of law and fact; (3) typicality-that the [representative] plaintiffs' claims are typical of the claims of the class; and (4) adequacy of representation-that the interests of the class are protected adequately....
"Second, if the foregoing criteria are satisfied, the court then must evaluate whether the certification requirements of Practice Book § 9-8 [3] are satisfied.
*157 These requirements are: (1) predominance-that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) superiority-that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (Internal quotation marks omitted.) Neighborhood Builders, Inc. v. Madison , 294 Conn. 651, 658, 986 A.2d 278 (2010).
It is the class action proponent's burden to prove that all of the requirements have been met. Id., at 656-57, 986 A.2d 278. To determine whether that burden has been met, we have followed the lead of the federal courts; see General Telephone Co. of the Southwest v. Falcon , 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed. 2d 740 (1982) ; directing our trial courts to undertake a " 'rigorous analysis.' " Neighborhood Builders, Inc. v. Madison , supra, 294 Conn. at 656, 986 A.2d 278 ; Marr v. WMX Technologies, Inc. , 244 Conn. 676, 680, 711 A.2d 700 (1998) ; see also Collins v. Anthem Health Plans, Inc. , 275 Conn. 309, 322-23, 880 A.2d 106 (2005) ("[b]ecause our class certification requirements are similar to those embodied in rule 23 of the Federal Rules of Civil Procedure, and our jurisprudence governing class actions is relatively undeveloped, we look to federal case law for guidance in construing the provisions **49 of Practice Book §§ 9-7 and 9-8" [footnote omitted] ).
We have not previously articulated with any specificity what a "rigorous analysis" by the trial court necessarily entails. Although some of the defendant's specific concerns are addressed in the sections that follow, there are certain overarching parameters that can be gleaned from the case law and other authoritative sources. "[A] 'rigorous analysis' ordinarily involves looking beyond the allegations of the plaintiff's complaint. The rigorous-analysis requirement means that a class is not maintainable merely because the complaint parrots the legal requirements of the class-action rule....
"In applying the criteria for certification of a class action, the [trial] court must take the substantive allegations in the complaint as true, and consider the remaining pleadings, discovery, including interrogatory answers, relevant documents, and depositions, and any other pertinent evidence in a light favorable to the plaintiff. However, a trial court is not required to accept as true bare assertions in the complaint that class-certification prerequisites were met.... Class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (Footnotes omitted.) 59 Am. Jur. 2d 542-43, Parties § 89 (2012); accord Comcast Corp. v. Behrend , 569 U.S. 27, 33-34, 133 S.Ct. 1426, 185 L.Ed. 2d 515 (2013) ; General Telephone Co. of the Southwest v. Falcon , supra, 457 U.S. at 160-61, 102 S.Ct. 2364 ; Collins v. Anthem Health Plans, Inc. , supra, 275 Conn. at 321, 880 A.2d 106.
Consequently, a rigorous analysis "frequently entail[s] overlap with the merits of the plaintiff's underlying claim." (Internal quotation marks omitted.) Comcast Corp. v. Behrend , supra, 569 U.S. at 33-34, 133 S.Ct. 1426 ; accord **50 In re Initial Public Offerings Securities Litigation , 471 F.3d 24, 41 (2d Cir. 2006). "In determining the propriety of a class action, [however] the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [the class action rules] are met." (Internal quotation marks omitted.) Collins v. Anthem Health Plans, Inc. , supra, 275 Conn. at 321, 880 A.2d 106. *158 For purposes of the present case, it is important to emphasize that although a rigorous analysis of these requirements may entail consideration of various factors, such an analysis "does not require the court to assign weight to any of the criteria listed, or to make written findings as to each factor, but merely requires the court to weigh and consider the factors and come to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy." 59 Am. Jur. 2d, supra, § 89, p. 543. "The trial court, [well positioned] to decide which facts and legal arguments are most important to each [rule's] requirement, possesses broad discretion to control proceedings and frame issues for consideration under [the rule].... But proper discretion does not soften the rule: a class may not be certified without a finding that each ... requirement is met." (Citation omitted.) In re Hydrogen Peroxide Antitrust Litigation , 552 F.3d 305, 310 (3d Cir. 2008).
"Although no party has a right to proceed via the class mechanism ... doubts regarding the propriety of class certification should be resolved in favor of certification." (Internal quotation marks omitted.) Collins v. Anthem Health Plans, Inc. , supra, 275 Conn. at 321, 880 A.2d 106. Even if certification is granted, "the trial court is authorized to monitor developments bearing on the propriety of its class certification orders, and to amend those orders in light of subsequent developments.... In the event that evidence later demonstrates that [an] alleged conflict exists, the trial court may then revisit **51 the issue." (Citations omitted.) Collins v. Anthem Health Plans, Inc. , 266 Conn. 12, 40, 836 A.2d 1124 (2003).
Having clarified the standards that govern the trial court's class certification decision, we note that the standards that govern our review of that decision are well settled. "We apply an abuse of discretion standard both [to] the lower court's ultimate determination on certification of a class as well as to its rulings that the individual [class certification] requirements have been met.... While our review of the legal standards applied by the [trial] court and the court's other legal conclusions is de novo ... the [trial] court's application of those standards to the facts of the case is again reviewed only for abuse of discretion .... This standard means that the [trial] court is empowered to make a decision-of its choosing-that falls within a range of permissible decisions, and we will only find abuse when the [trial] court's decision rests on an error of law ... or a clearly erroneous factual finding, or ... its decision ... cannot be located within the range of permissible decisions."[10] (Citations omitted; emphasis in original; internal quotation marks omitted.) Myers v. Hertz Corp. , 624 F.3d 537, 547 (2d Cir. 2010), cert. denied, 565 U.S. 930, 132 S.Ct. 368, 181 L.Ed. 2d 234 (2011). Moreover, we afford "even greater deference when reviewing a [trial court's] decision to certify a class than when reviewing a decision declining to do **52 so." (Internal quotation marks omitted.) *159 Collins v. Anthem Health Plans, Inc. , supra, 266 Conn. at 23-24, 836 A.2d 1124.
With this legal backdrop in mind, we turn to the defendant's claims.
II
Although a secondary argument by the defendant, we first dispose of the defendant's broad contention that the trial court's grant of class certification is improper under all of the prerequisites found in Practice Book § 9-7 : numerosity; commonality; typicality; and adequacy of representation.[11] We are largely in agreement with the plaintiffs that the defendant's analysis of these requirements is an "unfocused, scattershot attack" on the trial court's decision, effectively seeking de novo review. As this court previously has observed, "such wholesale attacks rarely produce results, tend to cloud the real issues, and in themselves cast doubts on the appellants' claims." Scribner v. O'Brien, Inc. , 169 Conn. 389, 391, 363 A.2d 160 (1975). Moreover, adequate briefing requires more than conclusory assertions untethered to any specific claim. See State v. Buhl , 321 Conn. 688, 726, 138 A.3d 868 (2016) (concluding that Appellate Court properly determined that claim was inadequately briefed because "the briefing of the defendant's claims was not only short, but confusing, repetitive, and disorganized"). Nonetheless, insofar as we can glean specific arguments directed at specific requirements, we address them and conclude that none merits reversal of the trial court's decision.
A
As noted previously, the requirement in Practice Book § 9-7 (1) is met where "the class is so numerous **53 that joinder of all members is impracticable ...." The defendant appears to contend that the trial court should have excluded from the certified class those customers who have arbitration or jury waiver clauses in their contracts. It contends that these customers either will be barred from participating in the action by these clauses or will be subjected to a stay of proceedings while the defendant's motions to compel arbitration are litigated.
The defendant's contention fails for two reasons. First, we agree with the trial court that it was "premature for the court to decide on a motion for class certification whether such contractual provisions are enforceable." See In re Titanium Dioxide Antitrust Litigation , 962 F.Supp.2d 840, 846, 863 (D. Md. 2013) (amending class definition to exclude class members with contracts containing mandatory arbitration provisions, forum selection clauses, and jury waiver provisions, after earlier decision had determined that issue was not ripe until opt out period lapsed, when it would be clear which putative class members have contracts containing such provisions, and until after it was determined whether those provisions would be enforceable against those members);[12] see also Sokol Holdings, Inc. v. BMB Munai, Inc. , 542 F.3d 354, 361 (2d Cir. 2008) (arbitration agreements cannot be enforced without consent to arbitrate). When the class is closed and the defendant is prepared to litigate that issue, it may ask the trial court to revisit the class certification *160 issue. See Collins v. Anthem Health Plans, Inc. , supra, 266 Conn. at 40, 836 A.2d 1124 ("the court remains free to modify [class status] in the light of subsequent developments in the litigation" [internal quotation marks omitted] ). Indeed, **54 the plaintiffs contend that these provisions are enforceable for reasons broadly applicable to the class.
Second, the trial court concluded that, even if the defendant was correct as to this ground, there would still be sufficient remaining members to which these provisions would not apply to satisfy the numerosity requirement. The defendant's failure to contest this conclusion is fatal to any challenge to numerosity.
B
As best we can discern from the defendant's brief, there is no specific argument directed at Practice Book § 9-7 (2), which requires that "there are questions of law or fact common to the class ...." Perhaps this omission can be explained by the settled principle that commonality "is easily satisfied because there need only be one question common to the class ... the resolution of which will advance the litigation." (Internal quotation marks omitted.) Collins v. Anthem Health Plans, Inc. , supra, 275 Conn. at 323-24, 880 A.2d 106. As the trial court properly recognized, there are numerous factual and legal questions common to the class, which we explore further in our discussion of the predominance requirement in part III of this opinion.
C
Typicality, the third prerequisite under Practice Book § 9-7, is met where "the claims or defenses of the representative parties are typical of the claims or defenses of the class ...." The defendant contends that one half of the potential class is subject to oral agreements, not written contracts and, therefore, are entitled to pursue only an unjust enrichment claim and not a breach of contract claim.[13] By contrast, the plaintiffs **55 had written contracts and, therefore, are entitled to pursue only a breach of contract claim and not an unjust enrichment claim.[14] We disagree that these concerns render the trial court's conclusion that the typicality requirement was met an abuse of discretion. *161 Typicality "requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." (Internal quotation marks omitted.) Collins v. Anthem Health Plans, Inc. , supra, 266 Conn. at 34, 836 A.2d 1124 ; see also In re Schering Plough Corp. ERISA Litigation , 589 F.3d 585, 599 (3d Cir. 2009) ("[a] common thread running through the various components of typicality ... is the interest in ensuring that the class representative's interests and incentives will be generally aligned with those of the class as a whole"). "[T]he mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification ...." (Internal quotation marks omitted.) Macomber v. Travelers Property & Casualty Corp. , 277 Conn. 617, 629-30, 894 A.2d 240 (2006). **56 As the trial court correctly noted, proof of the unjust enrichment claim will require resolution of the same common questions relating to the federal gasoline tax and the state gross receipts tax as those relating to the other claims. As these common issues occupy essentially the same degree of centrality to each of the claims made, the plaintiffs' pursuit of a breach of contract claim will share central " 'disputed [issues] of law or fact' " with those potential class members who have an unjust enrichment claim. Collins v. Anthem Health Plans, Inc. , supra, 266 Conn. at 34, 836 A.2d 1124. Resolving these shared issues will be at the crux of any litigation.
Moreover, as the trial court properly observed, it is permissible to allege alternative claims for breach of contract and unjust enrichment. See Naples v. Keystone Building & Development Corp. , 295 Conn. 214, 238, 990 A.2d 326 (2010) (favorably citing Appellate Court case for proposition that "[p]arties routinely plead alternative counts alleging breach of contract and unjust enrichment, although in doing so, they are entitled only to a single measure of damages arising out of these alternative claims" [internal quotation marks omitted] ); see, e.g., New Hartford v. Connecticut Resources Recovery Authority , 291 Conn. 433, 447 and n.9, 970 A.2d 592 (2009) (plaintiffs asserted breach of contract and unjust enrichment claims); Stein v. Horton , 99 Conn. App. 477, 485, 914 A.2d 606 (2007) (acknowledging use of alternative claims). Therefore, typicality is established.
D
Adequacy of representation, the fourth prerequisite under Practice Book § 9-7, requires that "the representative parties will fairly and adequately protect the interests of the class." The defendant claims that the interests of the plaintiffs as class representatives are not aligned with those of the other potential class members because the plaintiffs are former customers, and ostensibly **57 former franchisees, whereas many other potential class members are current customers or franchisees.[15] We disagree.
We are aware that many federal district court decisions, particularly of an older vintage, take the view that a conflict of interest renders former customers/franchisees per se inadequate representatives of current customers/franchisees.[16]
*162 These cases generally reason that the former's lack of a stake in the continued success of the defendant's business gives rise to the possibility of over vigorous representation, involving the pursuit of relief that will impair the business or impeding settlement. See, e.g., Southern Snack Foods, Inc. v. J & J Snack Foods Corp. , 79 F.R.D. 678, 680 (D.N.J. 1978) ; Thompson v. T. F. I. Cos. , 64 F.R.D. 140, 148-49 (N.D. Ill. 1974) ; Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A. , 55 F.R.D. 26, 29 (S.D.N.Y. 1972). However, the better reasoned authority takes a more nuanced view: "[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. Only conflicts that are fundamental to the suit and that go **58 to the heart of the litigation prevent a plaintiff from meeting the [rule's] adequacy requirement.... Put another way, to forestall class certification the intraclass conflict must be so substantial as to overbalance the common interests of the class members as a whole." (Citation omitted; internal quotation marks omitted.) Matamoros v. Starbucks Corp. , 699 F.3d 129, 138 (1st Cir. 2012) ; see 1 A. Conte & H. Newberg, Newberg on Class Actions (4th Ed. 2002) § 3:35, pp. 487-91 (concluding that there is no support for irrebuttable presumption that plaintiffs who lack continuing relations with defendant would be inadequate representatives and noting advantage of class representative who is free from pressures and reprisals from defendant);[17] see also Carder Buick-Olds Co. v. Reynolds & Reynolds, Inc. , 148 Ohio App. 3d 635, 640-42, 775 N.E.2d 531 (2002) (distinguishing conflict when class is franchisees as compared to customers). Courts have recognized that the possibility of such a conflict is diminished when, as in the present case, class members have a right to opt out of the class. See Matamoros v. Starbucks Corp. , supra, at 139 ; Smilow v. Southwestern Bell Mobile Systems, Inc. , 323 F.3d 32, 43 (1st Cir. 2003) ; Carder Buick-Olds Co. v. Reynolds & Reynolds, Inc. , supra, at 643, 775 N.E.2d 531. *163 In the present case, the mere difference in status (former versus current) identified by the defendant as **59 an intraclass conflict cannot reasonably be deemed to be so substantial as to overbalance the common interests of the class members as a whole, under the facts of this case and at the present juncture. Cf. In re Wells Fargo Home Mortgage Overtime Pay Litigation , Docket No. MDL 06-1770 (MHP), 2007 WL 3045995, *5 (N.D. Cal. October 18, 2007) (concluding that concerns raised in "decades-old cases" regarding former employee class action plaintiffs were not compelling given that record does not show that successful action will unduly affect current employment and compensation arrangements and that size of monetary award is unlikely to significantly hamper defendant's business, given its large size and prominence within financial industry), rev'd on other grounds, 571 F.3d 953, 959 (9th Cir. 2009). If, and when, such a conflict manifests or is established by further proof, the trial court would have options other than decertifying the class, such as redefining the class so that the class representative represents only those with like interests or permitting a current franchisee to join as a class representative. See Carder Buick-Olds Co. v. Reynolds & Reynolds, Inc. , supra, 148 Ohio App. 3d at 642, 775 N.E.2d 531 ; Shaver v. Standard Oil Co. , 68 Ohio App. 3d 783, 796, 589 N.E.2d 1348 (1990).
Accordingly, none of the defendant's contentions persuades us that the trial court abused its discretion in concluding that the class certification requirements of Practice Book § 9-7 were met.
III
We turn next to the defendant's claim that the trial court abused its discretion in determining that the predominance and superiority requirements of Practice Book § 9-8 (3) had been met. We address each in turn.
**60 A
The defendant contends that the trial court's predominance analysis most clearly demonstrates the court's failure to apply a rigorous analysis. The defendant asserts that the court performed only a cursory review of the claims and evidence in relation to the elements of the causes of action and disregarded its special defenses and uncontroverted evidence. The defendant claims that the trial court incorrectly "concluded and repeatedly emphasized that once the class members make a threshold showing ... that they met the class definition, then proof of membership in the class will be substantially determinative of the elements of their claims ...." We conclude that the trial court's analysis was sufficiently rigorous and that its conclusion that the predominance requirement was met was not an abuse of discretion.
"[C]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof....
"In order to determine whether common questions predominate, [a court must] ... examine the [causes] of action asserted in the complaint on behalf of the putative class.... Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action.... Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement *164 to ... relief.... [When], after adjudication of the [class-wide] issues, [the] plaintiffs must still introduce a great deal of individualized proof or argue a number **61 of individualized legal points to establish most or all of the elements of their individual[ized] claims, such claims are not suitable for class certification ....
"[When] cases [involve] individualized damages ... [and those] damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.... It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude [class] certification....
"These standards inform us that a court should engage in a three part inquiry to determine whether common questions of law or fact predominate in any given case. First, the court should review the elements of the causes of action that the plaintiffs seek to assert on behalf of the putative class.... Second, the court should determine whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to monetary or injunctive relief.... Third, the court should weigh the common issues that are subject to generalized proof against the issues requiring individualized proof in order to determine which predominate.... Only when common questions of law or fact will be the object of most of the efforts of the litigants and the court will the predominance test be satisfied." (Emphasis omitted; internal quotation marks omitted.) Artie's Auto Body, Inc. v. Hartford Fire Ins. Co. , 287 Conn. 208, 215-17, 947 A.2d 320 (2008) ; see In re Petrobras Securities , 862 F.3d 250, 268 (2d Cir. 2017) ("predominance is a comparative standard"), petition for cert. filed sub nom.
**62 Petroleo Brasileiro S.A.-Petrobras v. UniversitiesSuperannuation Scheme Ltd. , 86 U.S.L.W. 3245 (U.S. November 3 2017) ).
In the present case, the trial court's memorandum of decision set forth legal principles consistent with the preceding discussion. The court acknowledged the three part inquiry required for predominance. In separate sections, the court set forth the elements of each of the six causes of action alleged by the plaintiffs: (1) breach of contract; (2) unjust enrichment; (3) violation of the Connecticut Petroleum Franchise Act; (4) violation of CUTPA; (5) violation of the Uniform Commercial Code; and (6) misrepresentation. With respect to each action, it addressed whether generalized or individualized evidence would be required to prove the claim. Finally, it stated its ultimate conclusion that common issues predominate as to each cause of action.
The defendant's claims focus on the court's approach to the second part of the predominance inquiry. Insofar as the defendant essentially argues that the court's analysis under Practice Book § 9-8 failed to require the plaintiffs to do more than establish their satisfaction with Practice Book § 9-7 ("threshold inquiry"), we are compelled to point out that the trial court's findings under § 9-7 well exceeded those required. It is altogether proper, therefore, that those findings would inform the court's analysis under § 9-8. See In re Target Corp. Customer Data Security Breach Litigation , 309 F.R.D. 482, 486 (D. Minn. 2015) (The commonality requirement and the predominance requirement "are related and somewhat interdependent concepts. Rule 23 [a] [of the Federal Rules of Civil Procedure] requires that there are *165 common questions of law or fact among class members' claims, and [r]ule 23 [b] [3] requires that those common questions predominate over individual issues."), appeal dismissed, Docket No. 15-8017 (8th Cir. June 23, 2016). Specifically, the court made the following findings in relation to § 9-7. The court **63 acknowledged differences between certain subclasses of customers with supply contracts, but noted key contractual language common to all. The court noted that the customers without such contracts had received form invoices, which appeared to be almost identical to the invoices received by the plaintiffs, who had supply contracts. With regard to commonality, although that consideration only requires "one question [of fact or law] common to the class ... 'the resolution of which will advance the litigation' "; Collins v. Anthem Health Plans, Inc. , supra, 275 Conn. at 323-24, 880 A.2d 106 ; the trial court identified numerous common questions. Common questions of fact regarding the purchase of gasoline from the defendant included (1) the price charged for each gallon of gasoline, (2) the lack of benefit from the federal tax credit, and (3) the charge of state gross receipts tax based on the price of gasoline as delivered, including the defendant's profit and delivery charges. Common legal questions included (1) whether the defendant charged its customers for federal gasoline tax at an incorrect rate because it did not apply the federal tax credit during the relevant period, and (2) whether the defendant improperly charged its customers the state gross receipts tax on the price of gasoline as delivered.
In its analysis of the requirements of Practice Book § 9-8, the second prong of the court's predominance analysis can be summarized as follows. With regard to each cause of action, the trial court essentially found that the threshold showing for class membership-the purchase of gasoline from the defendant during the relevant period-left common questions largely determinative of each of the causes of action, namely, whether the defendant (1) charged class members for federal gasoline tax at an incorrect rate because it did not give them the benefit of the federal tax credit, and (2) properly charged the state gross receipts tax on gasoline as delivered. Thus, for example, in considering **64 the bad faith element of a violation of the relevant provision of the Uniform Commercial Code, the court concluded that this element depended on those same common questions.
The court acknowledged that certain causes of action required additional elements that would not be subject to common proof. For example, the court found that the counts alleging a violation of the Connecticut Petroleum Franchise Act and a violation of CUTPA required an initial determination-that the potential class member is a franchisee of the defendant or suffered an ascertainable loss, respectively-but that the aforementioned threshold showing and common questions would then be applicable to prove the remaining elements of each such cause. With respect to the CUTPA violation, the court indicated that the individualized loss could be determined by a common mathematical equation. Ultimately, the trial court determined that common issues of fact and law predominated with respect to proof of the elements of each of the claims.
Our review of the trial court's analysis confirms the defendant's contention that the court did not expressly address whether every element of every cause of action would require individualized proof. However, we are not persuaded that these omissions render its decision less than the rigorous analysis called for or otherwise an abuse of discretion. The trial *166 court is required to articulate a conclusion as to each requirement of the class certification rule, in this case, that common issues predominate. See 59 Am. Jur. 2d, supra, § 89, p. 543 (rigorous analysis "does not require the court to assign weight to any of the criteria listed, or to make written findings as to each factor, but merely requires the court to weigh and consider the factors and come to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy"); see also **65 In re Hydrogen Peroxide Antitrust Litigation , supra, 552 F.3d at 310 ("The trial court, [well positioned] to decide which facts and legal arguments are most important to each [rule's] requirement, possesses broad discretion to control proceedings and frame issues for consideration under [the rule].... But proper certification does not soften the rule: a class may not be certified without a finding that each ... requirement is met." [Citation omitted.] ); Nissan Motor Co. v. Fry , 27 S.W.3d 573, 591 (Tex. App. 2000) ("[i]n determining whether common issues predominate, the trial court need only identify substantive law issues that will control the litigation"). This inquiry is a comparative one based on a broader view of the case, not on the number of elements on either side. See Sun Coast Resources, Inc. v. Cooper , 967 S.W.2d 525, 533 (Tex. App. 1998) ("[t]he test for 'predominance' is not whether the common issues outnumber the individual issues; rather, it is whether the common issues will be the object of most of the efforts of the court and litigants"). As long as there is a basis to conclude that the trial court reached a reasoned conclusion that common issues will outweigh others, predominance is properly established. See Neighborhood Builders, Inc. v. Madison , supra, 294 Conn. at 670, 672, 986 A.2d 278 (when trial court found "common issues subject to generalized proof predominate over the issues requiring individualized proof [because] the main issue in this case is whether [the defendant] assessed excessive building permit fees over a defined time period," which would be proven by "generalized evidence" from defendant's records, trial court's predominance analysis characterized as "thorough and appropriate"). This inquiry does not require an express acknowledgment of the proof relevant to every element, but instead an acknowledgment of any issue critical to liability that was not susceptible to common proof which, in and of itself or in combination with other **66 elements, would be sufficient to defeat predominance.[18] Compare In re Initial Public Offerings Securities Litigation , supra, 471 F.3d at 42-44 (citing such elements), with Tyson Foods, Inc. v. Bouaphakeo , --- U.S. ----, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016) ("[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper ... even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members" [internal quotation marks omitted] ). If the defendant believed that the trial court overlooked individualized proof required for any particular element of any particular cause of action that was of such consequence that it outweighed those cited by the trial court, it was free to seek an articulation. See Misthopoulos v. Misthopoulos , 297 Conn. 358, 379, 999 A.2d 721 (2010) ("[i]t is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the *167 trial court has failed to state the basis of a decision ... to clarify the legal basis of a ruling ... or to ask the trial judge to rule on an overlooked matter" [internal quotation marks omitted] ). It failed to do so.
We can glean a reasoned basis for the trial court's conclusion. The certified class consists "of all entities or persons who: (i) purchased gasoline from [the defendant] during the period September 27, 2004, to date; (ii) were charged federal gasoline tax at a rate of 18.4 cents per gallon on such gasoline purchases; (iii) did not receive the federal volumetric ethanol excise tax credit, while it was in effect, on such gasoline purchases; and (iv) were charged state gross receipts tax **67 on such gasoline purchases based on the price of gasoline, as delivered." Under that class definition, proof of class membership establishes that the defendant and the class member had some form of agreement for the sale and purchase of gasoline. Qualifying under the class definition requires significant proof, but, notably, proof arising from common sources. Specifically, we agree with the trial court that whether an entity or person qualifies under this definition appears to be provable by way of invoices and contractual information gleaned from the defendant's records, which is class-wide, undisputed evidence. See Artie's Auto Body, Inc. v. Hartford Fire Ins. Co. , supra, 287 Conn. at 235, 947 A.2d 320 (upholding trial court's conclusion "that common questions predominated on the issue of liability because almost all of the proposed evidence on whether [the defendant] had engaged in unfair or deceptive acts or practices consisted of data and information provided by [the defendant's] own documents, records and employees" and that evidence necessary to prove causation and ascertainable harm likewise originated from defendant's "records and sources and, therefore, would be common to the class"); see also Neighborhood Builders, Inc. v. Madison , supra, 294 Conn. at 672, 986 A.2d 278 ("individualized proof will not be necessary to identify class members and the fees they paid because the relevant information may be discovered by examining the [defendant town's] public records").
Having concluded that the trial court's decision, on its face, appears to have reached a reasoned conclusion, we turn to specific concerns raised by the defendant with regard to that decision. With respect to the count alleging breach of contract, the defendant contends that the elements of performance and breach require individualized proof.[19] We agree that whether the parties performed **68 may require some individualized proof, specifically, to demonstrate that the potential class members actually paid for the invoiced gasoline. However, this question will largely be provable by common evidence, namely, the defendant's records, and does not clearly predominate over the other elements of the cause raising questions common to the class. With regard to the element of breach, we note that the plaintiffs contend that, because the defendant improperly charged federal and state *168 tax fees to the class as a whole, this is a class-wide breach that can be established by common proof. Whether the plaintiffs actually can prove this, or whether the defendant will successfully defend against the allegation, goes to the merits and extends beyond ensuring that the class certification requirements are met. See Collins v. Anthem Health Plans, Inc. , supra, 275 Conn. at 321, 880 A.2d 106 ("the question is not whether the ... plaintiffs ... will prevail on the merits, but rather whether the requirements of [the class action rules] are met" [internal quotation marks omitted] ). Therefore, we are not persuaded that the trial court abused its discretion in finding that the predominance requirement had been met for this count.
With respect to the count alleging a violation of the Connecticut Petroleum Franchise Act, the defendant asserts that the trial court incorrectly determined that common proof could "establish a franchise relationship and a right to recovery under the franchise provisions."
**69 [20] The relevant subsections of the act, General Statutes § 43-133l (f) (6), (7) and (9), respectively require good faith, fair and reasonable prices, and no discrimination between franchisees. Although the proof required to establish that potential class members are franchisees will mainly come from the defendant's contractual records, we acknowledge that proof may also be required from records of individual customers on their business models. Moreover, although the first two subdivisions at issue will require common proof, we acknowledge that the third, discrimination, will likely require individualized proof. Ultimately, we conclude that the trial court's implicit conclusion-that the individualized proof necessary to establish discrimination and to supplement the common proof to establish the franchise relationship would not predominate over the common proof required to prove this cause of action-was not an abuse of discretion.
With regard to the count alleging misrepresentation, the defendant contends that this claim must be proved by individualized oral conversations between the defendant and each customer. The plaintiffs' claim, as we understand it, however, is not that the defendant made **70 oral misrepresentations regarding the federal and state tax charges at issue, but, rather, that the invoices reflecting those charges misrepresented the actual taxes imposed by law, causing the injury alleged. Even if we assume direct conversations occurred between the defendant and individual customers, nothing in the evidence presented thus far indicates that those customers were provided with different information on the taxes assessed in their invoices. *169 Instead, the uniformity in the charges recorded by the invoices presented to the trial court provides no basis to infer that discussions on these taxes would not have been substantially uniform as well. Thus, the trial court's conclusion as to this count was not an abuse of discretion.
In a more broadly applicable attack, the defendant also argues that damages calculations will require individualized proof, particularly for lost profit damages. The defendant disregards the fact, however, that the plaintiffs eliminated their request for lost profit damages when they amended their pleadings. Although the absence of a request for such relief may result in some class members exercising their right to opt out of the class and, in turn, impact the class' ability to satisfy numerosity, that issue is one that the trial court may revisit if, and when, it arises. See Collins v. Anthem Health Plans, Inc. , supra, 266 Conn. at 40, 836 A.2d 1124 (trial court may amend class certification orders "in light of subsequent developments ... in the litigation" [internal quotation marks omitted] ). With regard to the damages actually sought in the amended pleadings, the trial court properly determined that the plaintiffs had satisfied their burden by providing two common formulas for the calculation of individual class members' damages. See Artie's Auto Body, Inc. v. Hartford Fire Ins. Co. , supra, 287 Conn. at 216, 947 A.2d 320 (fact that damages are calculated on individual basis does not impede class certification where common calculation method exists).
**71 Finally, the defendant claims that it has or will assert special defenses that require individualized proof, which the trial court failed to address and which will predominate over the common issues. We are not persuaded that this omission was fatal under the circumstances.
Although "the existence of a defense potentially implicating different class members differently does not necessarily defeat class certification ... it is ... well established that courts must consider potential defenses in assessing the predominance requirement ...." (Citations omitted; emphasis in original.) Myers v. Hertz Corp. , supra, 624 F.3d at 551. The existence of special defenses, which may or may not be subject to common proof, is merely another factor to be considered in that assessment. See Vaccariello v. XM Satellite Radio, Inc. , 295 F.R.D. 62, 73 (S.D.N.Y. 2013) ; see also In re Nassau County Strip Search Cases , 461 F.3d 219, 225 (2d Cir. 2006).
With regard to the effect of defenses on the propriety of class certification, there does not appear to be a uniform view as to whether the defendant should bear the burden of production while the plaintiff retains the ultimate burden of persuasion as to class requirements, or whether the plaintiff should bear the burden of both.[21]
**72 *170 We need not resolve this issue in the present case. At the very least, the defendant would have to provide the plaintiffs with a sufficient basis to be able to address how a defense might bear on class certification requirements. The defendant did not do so. Each of the special defenses states a summary legal conclusion, lacking any supporting facts or indication as to which counts they are directed. As such, they would not even meet our fact pleading requirements for special defenses as set forth in Practice Book § 10-50. See Fidelity Bank v. Krenisky , 72 Conn. App. 700, 718, 807 A.2d 968 ("[t]he purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action" [internal quotation marks omitted] ), cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002) ; R. Bollier et al., 1 Stephenson's Connecticut Civil Procedure (3d Ed. 1997) § 83 (g), p. 249 ("the rules applicable to fact pleading in complaints are equally applicable to fact pleading in special defenses" [footnote omitted] ); see also, e.g., Polson v. Wargo , Docket No. CV-09-4029659-S, 2010 WL 3961378, *1 (Conn. Super. September 7, 2010) (striking defenses alleging that plaintiffs' claims are barred in whole or in part by "doctrine of waiver" and "doctrine of estoppel" because they state mere legal conclusions); Generalli v. Drive-O-Rama , Docket No. CV-05-4006726-S, 2007 WL 2570344, *2 (Conn. Super. August 15, 2007) ("[T]he defendant alleges five special defenses, but does not plead any **73 facts in support of those allegations showing how or why each of the alleged special defenses applies. The special defenses, as pleaded, do not comply with the Practice Book rules because Connecticut is a fact pleading state."); Access America, LLC v. O'Connor , No. CV-05-4004912-S, 2006 WL 1999443, *1 (Conn. Super. June 28, 2006) ("The special defenses, as pleaded, do not comply with the Practice Book rules .... [T]he defendant's special defenses do not allege facts to support the legal conclusions that the written agreement is unconscionable and/or violates public policy, that it is invalid or that it is void ab initio due to fraud.").
The defendant's memorandum of law in opposition to class certification does not illuminate these matters. The lone reference to special defenses in the predominance section of that memorandum makes the following broad, tentative statement in its discussion of the breach of contract claim: "Moreover, because [forty-three of the] putative class members had no written contracts, [the defendant's] special defenses may apply to them differently, depending on the facts and circumstances of each agreement to purchase motor fuel, each class member's understanding of the prices charged by [the defendant], and whether and when each class member came to believe that [the defendant's] pricing breached the parties' agreement." An appended footnote cites eight doctrines alleged as special defenses: "waiver; unclean hands; failure to mitigate damage[s]; breach of the covenant of good faith and fair dealing; estoppel; mutual mistake; unilateral mistake; and laches ...."
*171 The defendant's position effectively would impose the burden on the plaintiffs to prove whether each conclusory defense includes common issues and/or are subject to common proof as to whichever counts they conceivably might be relevant. We are aware of no **74 authority that supports such a proposition, and we squarely reject it.[22]
In sum, the trial court's ultimate determination that predominance was met was not an abuse of discretion.
B
Superiority, the second prerequisite under Practice Book § 9-8 (3), is "intertwined" with the predominance requirement. See Collins v. Anthem Health Plans, Inc. , supra, 275 Conn. at 347, 880 A.2d 106. "If the predominance criterion is satisfied, courts generally will find that the class action is a superior mechanism even if it presents management difficulties." Id. ; see also Grimes v. Housing Authority , 242 Conn. 236, 244, 698 A.2d 302 (1997) (listing benefits to class actions).
Insofar as the defendant cites the absence of any other previously filed lawsuit regarding the alleged **75 overcharges as significant, the defendant's point is unclear. It assumes that the potential damages are substantial enough to incentivize individual lawsuits but also argues that the absence of prior lawsuits suggests that an inconsequential number of lawsuits would be filed if class certification was not granted.
The defendant's additional argument, in effect, contends that the totality of the trial court's purportedly improper rulings regarding the other class action requirements evidences why a class action is not the superior mechanism to resolve this issue. In light of our prior determinations that the trial court's conclusions were not an abuse of discretion, no further response is required.
The orders granting class certification are affirmed.
In this opinion the other justices concurred.

The defendant appealed from the class certification orders to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Although an order granting class certification is usually not immediately appealable, because certain counts alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., General Statutes § 42-110h authorizes an immediate appeal on the class certification orders as to those counts. Because the remaining counts are "inextricably intertwined" with the CUTPA counts, the trial court's orders granting class certification as to those counts also may be reviewed. See Collins v. Anthem Health Plans, Inc. , 266 Conn. 12, 29, 836 A.2d 1124 (2003) ; see also Artie's Auto Body, Inc. v. Hartford Fire Ins. Co. , 287 Conn. 208, 210 n.3, 947 A.2d 320 (2008).

The trial court certified identical classes in each of the actions by separate decisions. For convenience, we refer to both classes as the class.

Faugno is now known as Woodway Texaco, LLC.

Kennynick, LLC, and Faugno are the plaintiffs in the first action filed, the appeal of which is Docket No. SC 19875. Kennynick, LLC, and Faugno also are the counterclaim plaintiffs in the second action filed, the appeal of which is Docket No. SC 19874. See footnote 6 of this opinion. Faugno is the named defendant in the second action. Because the class certification issues arise from their designations as plaintiffs, we refer to Kennynick, LLC, and Faugno as the plaintiffs in this opinion.

The tax credit at issue was the volumetric ethanol excise tax credit (federal tax credit). The federal tax credit reduced the federal tax on gasoline that includes ten percent alcohol, which is the gasoline/alcohol mixture used in Connecticut. The federal tax credit reduced the tax rate from 18.4 cents per gallon to 13.3 cents per gallon from January 1, 2005 through December 31, 2008, and to 13.9 cents per gallon from January 1, 2009 through December 31, 2011, when the federal tax credit expired. The plaintiffs alleged that the defendant improperly charged its customers at the original tax rate of 18.4 cents per gallon throughout the time the federal tax credit was in effect, denying them its benefit.

The plaintiffs filed amended complaints and counterclaims, which eliminated certain counts and requests for relief. For convenience, we limit our discussion to the operative amended pleadings and simply refer to them as the complaint and counterclaim. We note that, although both operative pleadings alleged violations of the Uniform Commercial Code under General Statutes §§ 42a-1-203 and 42a-2-103, the trial court expressly declined to address those sections because the plaintiffs did not refer to them in their motions for class certification. We presume that the alleged violations based on these sections have been abandoned.

The defendant also named as plaintiffs Gene A. Faugno III and Michael A. Faugno, Sr. Those individuals are not parties to the class action.

Because the two actions and the relevant filings are, for all intents and purposes, identical, for convenience, we refer to the consolidated actions as the action.

This was a renewed motion. A few months earlier, the trial court had issued orders granting the defendant's motions for a determination of denial of class certification and denying the plaintiffs' motions for class certification on the ground that the plaintiffs had failed to produce sufficient evidence to demonstrate numerosity. The trial court issued the orders without prejudice, citing the defendant's failure to comply with the plaintiffs' discovery requests. The trial court concurrently issued orders directing the defendant to comply with those requests.

"To illustrate ... using the example of numerosity, review of the factual finding as to the size of the proposed class would be for clear error, review of the judge's articulation of the legal standard governing numerosity would be de novo, and review of the ultimate ruling that applied the correct legal standard to the facts as found would be for abuse of discretion. Thus a ruling on numerosity, based on a finding of fact that is not clearly erroneous and with application of a legal standard that is correct, could be affirmed as within allowable discretion, in some circumstances, whether the ruling determined that this [class action rule] requirement was met or not met." In re Initial Public Offerings Securities Litigation , supra, 471 F.3d at 41.

Three pages of the defendant's appellate brief are dedicated to its analysis of these four requirements, undifferentiated by reference to the particular requirement(s) to which the assertion is directed.

See In re Titanium Dioxide Antitrust Litigation , Docket No. 10-0318 (RDB), 2012 WL 5947283, *4 (D. Md. November 27, 2012) ; In re Titanium Dioxide Antitrust Litigation , 284 F.R.D. 328, 350 (D. Md. 2012).

Insofar as the defendant contends that the circumstances in which the agreements were made vary, requiring individualized proof, we note that it advances the same contention regarding the predominance requirement. We address this concern relating to the special defenses in our discussion of the predominance requirement in part III A of this opinion.
We also note that the defendant asserts that it has a $43,743.53 prejudgment remedy against Faugno, which creates a unique interest. The trial court reasonably rejected this argument because typicality does not require that the factual background be entirely identical between class representatives and the class at large. The defendant's brief appears to assert this same argument in the context of Faugno's suitability to be a class representative, contending that Faugno will be "distracted by its own unique issues." As this court has recognized, "[t]he adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria ...." (Internal quotation marks omitted.) Collins v. Anthem Health Plans, Inc. , supra, 266 Conn. at 54, 836 A.2d 1124. We are not persuaded that this issue alters Faugno's suitability. In any event, none of these claims would defeat class certification because Faugno is not the only class representative.

Although the defendant makes these arguments in the section of its brief attacking the trial court's predominance analysis, which precedes its analysis of typicality, because our analysis follows the reverse sequence of the defendant's, and these arguments also relate to typicality, we address those arguments in this part of the opinion.

The trial court acknowledged this argument, and noted its disagreement with it, but did not set forth its reasons for doing so. The defendant did not seek an articulation. Because the defendant's position appears to advocate a per se rule, we reject it as a matter of law.

See, e.g., Auto Ventures, Inc. v. Moran , Docket No. 92-426-CIV, 1997 WL 306895, *5 n.5 (S.D. Fla. April 3, 1997) ; Hewitt v. Joyce Beverages of Wisconsin, Inc. , 97 F.R.D. 350, 354 (N.D. Ill. 1982), aff'd, 721 F.2d 625 (7th Cir. 1983) ; Southern Snack Foods, Inc. v. J & J Snack Foods Corp. , 79 F.R.D. 678, 680-81 (D.N.J. 1978) ; Aamco Automatic Transmissions, Inc. v. Tayloe , 67 F.R.D. 440, 445-47 (E.D. Pa. 1975) ; Thompson v. T. F. I. Cos. , 64 F.R.D. 140, 149 (N.D. Ill. 1974) ; DiCostanzo v. Hertz Corp. , 63 F.R.D. 150, 151 (D. Mass. 1974) ; Matarazzo v. Friendly Ice Cream Corp. , 62 F.R.D. 65, 68-69 (E.D.N.Y. 1974) ; Seligson v. Plum Tree, Inc. , 61 F.R.D. 343, 345-46 (E.D. Pa. 1973) ; Van Allen v. Circle K Corp. , 58 F.R.D. 562, 564 (C.D. Cal. 1972) ; Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A. , 55 F.R.D. 26, 28-29 (S.D.N.Y. 1972). The defendant relies on one of our trial court's decisions following this line of cases. See McNerney v. Carvel Corp. , Docket No. CV-00-579244, 2001 WL 267653, *4 (Conn. Super. February 23, 2001).

This treatise also discusses the situation in the present case, whereby the class representative occupies a terminated or former relationship with the defendant and seeks to represent a class including persons with a present relationship for both damages and prospective injunctive relief. 1 A. Conte & H. Newberg, supra, § 3:35, pp. 494-98. The treatise notes that courts have taken varied approaches, some deeming the representation proper as long as the particular conflict is outweighed by the efficiencies that would flow from class certification. We infer from the trial court's rejection of the defendant's general argument that it concluded that the balance weighed in favor of such efficiencies. We observe that the injunctive relief sought in the present case effectively would direct the defendant not to continue the same actions that gave rise to the claims for damages, not to undertake other actions.

Although it is not always necessary to articulate the nature of proof required for each element of each cause of action, we note that it would be the better practice to do so to ensure a proper outcome and a sufficient record for appellate review.

As the trial court correctly stated, plaintiffs seeking to prove breach of contract "must prove that: (1) the defendant and the class member formed an agreement; (2) the class member performed under the agreement; (3) the defendant breached the agreement; and (4) the class member incurred damages ... caused by the breach ...." Collins v. Anthem Health Plans, Inc. , supra, 275 Conn. at 333, 880 A.2d 106. The defendant argues that individualized proof will be required to demonstrate each of these elements. We conclude that the trial court properly determined that proof that a potential class member qualifies for the class establishes that an agreement was formed between that entity and the defendant. We address the issue of damages later in this part of the opinion.

As the trial court correctly stated, General Statutes § 42-133l (f) of the Petroleum Franchise Act provides in relevant part: "No franchisor, directly or indirectly, through any officer, agent or employee, shall do any of the following ... (6) fail to deal in good faith with a franchisee; (7) sell, rent or offer to sell to a franchisee any product or service for more than a fair and reasonable price ... (9) discriminate between franchisees in the charges offered or made for royalties, goods, services ...." The first step to any such claim is a determination that a franchise relationship exists. Ackley v. Gulf Oil Corp. , 726 F.Supp. 353, 367 (D. Conn.), aff'd, 889 F.2d 1280 (2d Cir. 1989).
We note that, in connection with its arguments relating to this count, the defendant appears to suggest that the trial court, on a finding that only one half of the potential class members could pursue this count, should have created subclasses, not a single class. This suggestion is insufficient to constitute an adequately briefed claim. Therefore, we decline to address it. See, e.g., Estate of Rock v. University of Connecticut , 323 Conn. 26, 33, 144 A.3d 420 (2016).

Compare 59 Am. Jur. 2d, supra, § 86, p. 537 ("[o]nce the proponent of the class has made a prima facie showing that the prerequisites of the class action statute or rule are met, the burden of producing evidence shifts to the opponent although the proponent retains the burden of persuasion"), and In re Kosmos Energy Ltd. Securities Litigation , 299 F.R.D. 133, 152-53 (N.D. Tex. 2014) ("Defendants, of course, bear the burden of proof on this affirmative defense and, as such, must submit evidence showing the existence of individual investor knowledge sufficient to preclude a finding by the [c]ourt that 'common liability issues predominate over individual knowledge issues.' This proof need not be at the level required to prove the affirmative defense on the merits but must be adequate to satisfy the court at the certification stage that 'individual knowledge inquiries might be necessary.' " [Emphasis omitted; footnote omitted.] ), with Thorn v. Jefferson-Pilot Life Ins. Co. , 445 F.3d 311, 321-22 (4th Cir. 2006) ("Our cases permit no exception to the rule that the plaintiff bears the burden of showing compliance with [r]ule 23 [of the Federal Rules of Civil Procedure] .... Moreover, the standard justifications for allocating the burden of proving an affirmative defense to the defendant-efficiency and fairness-disappear when the thing to be proved is no longer the merit of the defense but compliance with [r]ule 23.... There is no reason to believe that the defendant is any better suited than the named plaintiffs to prove whether an issue is common to the class simply because the defendant bears the burden of proving the merits of that issue. We therefore continue, as we must, to allocate to the plaintiff the burden of proving compliance with [r]ule 23." [Citations omitted.] ).

Even on appeal, the defendant largely fails to adequately brief its claims regarding the special defenses. Its sole, marginally adequately briefed claim relates to its contention that the uniform charges invoiced to its customers were known and either negotiated, ratified, or waived by those customers and that, accordingly, proof as to what individual customers knew at what time would be required. However, although this defense may require some individualized evidence, some of the evidence necessary to evaluate this defense will come from common proof, namely, the defendant's invoices and records. For instance, the defendant's invoices, which apparently reflect identical charges for the federal and state taxes at issue, will presumably serve to demonstrate in part that the purported waiver or ratification occurred as they would reflect when information was known to customers at various points in time. Similarly relevant would be the written contracts for approximately one half of the proposed class, which apparently contain nearly identical provisions relating to taxes. Accordingly, there is no basis to conclude that the issues necessary to resolve such defenses would predominate over the overarching common issues in the action. See Brown v. Kelly , 609 F.3d 467, 483 (2d Cir. 2010) ("Although a defense may arise and may affect different class members differently [this] does not compel a finding that individual issues predominate over common ones.... As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under [r]ule 23 [b] [3] [of the Federal Rules of Civil Procedure]." [Citation omitted; internal quotation marks omitted.] ).